IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HOWARD T. JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-579-GMS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

### I. INTRODUCTION

On May 8, 2012, the plaintiff, Howard T. Jones ("Jones"), filed this action against the Defendant Michael J. Astrue, Commissioner of Social Security (the "Commissioner"),[1] for review of the final decision denying Jones disability insurance benefits ("DIB") under Title II of the Social Security Act. (D.I. 2; D.I. 10 at 19.) Jones brought this civil action under 42 U.S.C. §405(g) as incorporated by 42 U.S.C. §1383(c)(3). (*Id.*)

Jones applied for disability and DIB on March 9, 2006. (D.I. 10 at 198.) Jones' claims were denied initially and on reconsideration. (*Id.* at 136–41, 145–49.) Subsequently, Jones filed a request for a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 150–51.) The claimant appeared and testified before ALJ, Judith Showalter, on May 15, 2008. (*Id.* at 44–48.) On June 26, 2008, the ALJ issued an unfavorable decision against Jones. (*Id.* at 124–25, 128.) Jones filed an appeal to the Appeals Council. (*Id.* at 132.) The Appeals Council remanded on

---

[1] Carolyn W. Colvin became the Commissioner (the "Commissioner") of the Social Security Administration (the "SSA") on February 13, 2013, after briefing began. Although, under FED. R. CIV. P. 25, Carolyn W. Colvin should be substituted for Michael J. Astrue, pursuant to 42 U.S.C. § 405(g), no further action is necessary to continue this action.

1

September 9, 2009, for further assessment of Dr. Kamali's opinion, assessment of the February 2006 MRIs of lumbar and cervical spine, and assessment of the severity of Jones' degenerative disc disease. (*Id.* at 132–33.) A second hearing was held before ALJ Showalter on May 6, 2010. (*Id.* at 89–115.) On July 10, 2010, the ALJ issued a second opinion denying disability benefits to Jones. (*Id.* at 19–43.) The Appeals Council denied review of the ALJ's second opinion and the ALJ's determination became final. (*Id.* at 2–8.) *See* C.F.R. §§404.955, 404.981 (2012); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).

Before the court are the parties' cross-motions for summary judgment. (D.I. 12; D.I. 13.) For the reasons that follow, the court will remand-in-part and deny-in-part Jones' motion for summary judgement. The court will affirm-in-part and remand-in-part the decisions of the ALJ and the Appeals Council. The court's reasoning follows.

## II. BACKGROUND

Howard T. Jones was born September 2, 1956. (D.I. 10 at 49.) He has a high school education. (*Id.* at 50.) Jones' previous employment was a network analyst and an ATM machine servicer. (*Id.* at 50, 52.) Jones is claiming disability from March 1, 2004 to December 31, 2008. (*Id.* at 227, 233.)

### 1. Medical History

#### a. Objective Medical Evidence

Jones has a history of neck and low back pain dating back to 1992. (D.I. 10 at 370.) Jones experienced a sharp snapping in his lower back while working in his yard in 1992. (*Id.*) Jones was involved in multiple minor motor vehicle accidents which re-injured his back in 1996, 1999, 2004, and 2005. (*Id.*) During the relevant time period Jones began seeing Dr. Stephen Levine, D.C., chiropractor, on May 4, 2005, for neck and back pain. (*Id.* at 332–37.) At this

2

primary visit, Dr. Levine ordered x-rays of Jones' neck and back. (*Id.*) In Dr. Levine's review of the x-rays, he found Jones was suffering from degenerative disc disease in the cervical and lumbar spines. (*Id.* at 318–19.) Additionally, he found disc narrowing and spondylosis at L3–L5. (*Id.*) From these findings Dr. Levine treated Jones for three months with chiropractic manipulation and manual therapy. (*Id.* at 338–69.)

In December 2005, Jones began treatment with Kenneth DeGroot, D.C. for daily neck and low back pain. (*Id.* at 387–94.) During physical examination, DeGroot found that Jones was experiencing distortion and muscle spasms in the cervical, thoracic, and lumbar spine, as well as limited range of motion in the cervical and lumbar spine. (*Id.* at 389.)

In February 2006, Jones began seeing an orthopedic specialist, William Barrish, M.D., for neck and back pain. (*Id.* at 396–97.) At that time Jones was experiencing muscle spasms, as well as, neck and back pain which radiated into his right leg causing him difficulty sleeping. (*Id.* at 397.) During Jones' physical examination, Dr. Barrish found mild tenderness to palpation at the cervical and lumbar spine, decreased sensation in the right S1 distribution, and positive straight leg raising on the right. (*Id.*) From these results Dr. Barrish ordered an MRI of the cervical and lumbar spine. (*Id.* at 396.)

An MRI of the cervical and lumbar spine was completed on February 6, 2006. (*Id.* at 314–15.) The lumbar spine presented multi-level degenerative disc disease, including severe central canal stenosis and bilateral neural foraminal stenosis at L4–L5 with large disc protrusion and significant facet arthropathy, as well as central and paramedian disc bulges at L3–L4 and L5–S1, causing severe right-sided neural foraminal stenosis, particularly at the L5–S1 level. (*Id.*) The cervical spine presented multi-level degenerative disc disease, with disc osteophyte

complex and spondylitic changes, most marked from the C4–C5 to the C6–C7 level, with mild central canal stenosis at that level. (*Id.* at 316–17.)

An EMG/nerve conduction study was taken on February 13, 2006, and was consistent with acute right L5–S1 radiculopathy. (*Id.* at 466.) Dr. Barrish recommended further chiropractic treatment, pain medications, and steroid injections for pain reduction. (*Id.* at 396.) Jones did not want to take prescription pain medications or receive steroid injections. (*Id.*) Additionally, Dr. Barrish referred Jones to see pain management specialist Mohammad Mehdi, M.D. (*Id.* at 398–99.)

Jones had follow-up appointments with Dr. Barrish on June 15, 2006, July 20, 2006, April 17, 2007, and August 13, 2008. (*Id.* at 458–60, 498.) During these appointments Dr. Barrish found restricted cervical and lumbar range of motion and positive straight leg raising. (*Id.*) At Jones' most recent appointment on January 7, 2009, the physical exam remained unchanged. (*Id.* at 517.)

In August 2006, Jones began seeing Dr. Mehdi for his neck and back pain. (*Id.* at 398–99.) Dr. Mehdi confirmed Jones was suffering from spinal stenosis, cervical spondylosis, and radicular pain on the right side. (*Id.* at 399.) Dr. Mehdi, also recommended anti-inflammatories and steroid injections for pain management. (*Id.*) Jones was not interested in pursuing steroid injections. (*Id.*) Dr. Mehdi recommended Jones return for steroid injections if the pain became unbearable and during the insured time period Jones did not return for injections.[2] (*Id.*)

Jones underwent a course of twenty physical therapy sessions between May 15, 2006, and July 17, 2006. (*Id.* at 427–40.) Physical therapy notes document improvement with treatment. (*Id.*) On July 25, 2007, Jones began treatment with orthopedic specialist, Mohammed

---

[2] Jones did eventually pursue steroid injections on December 29, 2009 and received significant pain relief as a result. (*Id.* at 544–50.)

4

Kamali, M.D. (*Id.* at 445–48.) On physical examination Dr. Kamali found mild tenderness to palpation on the right side of the neck and back with tightness, muscle spasms, and decreased range of motion in the neck. (*Id.* at 446.) The straight leg raising tests were positive and numbness was found in the right foot. (*Id.*) Additionally, Dr. Kamali reviewed Jones' MRIs of the lumbar and cervical spines. (*Id.*) He found severe central canal stenosis at L4–L5, large disc protrusion and significant facet arthropathy, resulting in severe central canal and bilateral neural foraminal stenosis in the lumbar spine. (*Id.*) Additionally, he found cervical spondylolytic changes C4–C5 to C6–C7, resulting in significant mass effect on the ventral subarachnoid space. Further, there was a mild foraminal central canal stenosis at C6–C7 in the cervical spine MRI. (*Id.*) Dr. Kamali confirmed Dr. Barrish's findings in the EMG study from February 2006 which revealed the presence of right L5–S1 radiculopathy with acute features. (*Id.* at 447.) Dr. Kamali determined Jones was suffering from a sprain of the neck and low back, with spinal canal stenosis of the cervical and lumbar spines and protruded discs. (*Id.*)

On October 3, 2006, Beshara Helou, M.D. evaluated Jones for State Disability Determination Services. (*Id.* at 400–02.) Dr. Helou performed a consultative physical exam. (*Id.*) She determined Jones suffered from myofascial back pain and mild degenerative disc disease with no neurological implications. (*Id.*) Dr. Helou opined that Jones was experiencing a mild form of degenerative disc disease and no neurological implications were present. (*Id.*)

On December 20, 2006, Jones saw his primary care physician, Julie Holman, M.D. (*Id.* at 442.) Jones suffers from Type II Diabetes. (*Id.*) Dr. Holman prescribed Jones medication to control the diabetes. (*Id.*) During this exam Jones complained of neck pain, fatigue, and tingling in his feet, right arm and right leg. (*Id.* at 420.) Dr. Holman noted Jones did not appear

5

uncomfortable during the exam and that he was able to bend over and completely remove his boot unassisted. (*Id.* at 442.)

After Jones' last insured date, Dr. Barrish referred Jones to Ronald Sabbagh, M.D. for further evaluation. (*Id.* at 517.) Dr. Sabbagh ordered new MRI studies. (*Id.* at 518.) The January 2009 MRI of Jones' cervical spine showed mild central spinal canal stenosis at C4–C5, C5–C6, and C6–C7 and a small central disc protrusion at C4–C5. (*Id.*) The MRI of the lumbar spine showed a medium-sized central L4–L5 disc extrusion with moderate stenosis involving both L5 nerve roots and a small broad-based right paracentral, posterolateral, and foraminal L5–S1 disc protrusion. (*Id.* at 519.) Dr. Sabbagh reviewed the MRIs with Jones, on January 29, 2009, and recommended surgery to deal with the pain associated with the spinal issues. (*Id.* at 566.) Jones is considering surgical options for pain relief. (*Id.*)

### b. Opinion Evidence

During the insured period Jones was seen by two treating physicians Dr. Barrish and Dr. Kamali—both orthopedic specialists.

Dr. Barrish opined that Jones was suffering from degenerative disc disease in the cervical and lumbar spine. (*Id.* at 397.) He recommended Jones undergo further chiropractic treatment and steroid injections. (*Id.* at 396.) Dr. Barrish completed Spinal Impairment Questionnaires on January 19, 2007, and November 19, 2009. (*Id.* at 412–18, 520–26.) On these questionnaires he opined that Jones was able to sit for eight-hours in an eight-hour work day, stand/walk for one hour in an eight-hour workday, with a sit/stand option, could occasionally lift/carry up to ten pounds, was limited in his ability to push, pull, and should avoid kneeling, bending, and stooping. (*Id.*) Dr. Barrish further opined that Jones would be able to sit for eight hours "with

frequent position changes," more specifically that he needed to get up and move around every thirty minutes, during the eight-hour workday, for five minutes. (*Id.*)

Dr. Kamali found Jones' chiropractic, medication, and physical therapy treatments had not caused significant improvement in Jones' condition. (*Id.* at 447.) He opined Jones was unable to tolerate "low stress work" and was "unable to do full time competitive work and has been unable to do so since early 2005." (*Id.* at 446–48, 475–76.) Dr. Kamali's clinical findings included limited range of motion of the cervical and lumbar spine, tenderness, muscle spasm, right facet sensory loss in the lumbar spine, hypoactive reflexes, mild lumbar muscle weakness, and numbness in the right foot. (*Id.* at 446.) These findings were based on physical examinations and review of the MRIs and EMG study taken by Dr. Barrish. Jones saw Dr. Kamali approximately once a week for two years. (*Id.* at 471.) Dr. Kamali further opined that Jones' pain would "interfere with attention and concentration" making work very difficult for Jones to perform. (*Id.* at 475–76.) Dr. Kamali completed a Spinal Impairment Questionnaire on July 25, 2007, where he opined that lifting, bending, standing, and sitting for too long caused Jones pain. (*Id.*) In Dr. Kamali's opinion, Jones could sit for three hours, stand/walk for two hours, with a sit/stand option, occasionally lift/carry up to five pounds, and perform no pushing, pulling, kneeling, bending, or stooping. (*Id.* at 474–75.) He further opined that Jones would need to get up three to four times a day for approximately fifteen minutes each time. (*Id.*)

In October 2006, Dr. Helou filed a report for the State Disability Determination Services based on her examination of Jones. (*Id.* at 402–408.) Dr. Helou observed that Jones did not have difficulty getting on and off the exam table, was able to perform heel-toe walking, and tandem walking. (*Id.* at 401.) She further observed that Jones' motor and sensory abilities as well as his range of motion in his joints were normal. (*Id.* at 404.)

In January 2010, Dr. Joseph Schanno examined Jones for Delaware Disability Services and completed a Medical Source Statement. (*Id.* at 527–31.) Dr. Schanno opined that Jones, in an eight-hour workday, could lift up to ten pounds frequently and fifty pounds occasionally, carry up to ten pounds frequently and twenty pounds occasionally, sit for three hours, stand for two hours, and walk for two hours, sit/stand/walk for one hour at a time, could frequently use his hands for activities except pushing/pulling, could occasionally use his feet for operation of foot controls, could occasionally perform postural activities, except no climbing of ropes, ladders, or scaffolds, and avoid unprotected heights and temperature extremes. (*Id.* at 535–36.)

### A.  ALJ Hearing II Testimony

#### 1.  Jones' Testimony

On May 6, 2010, Jones testified at a second ALJ hearing in front of ALJ Showalter. (*Id.* at 91.) At this hearing the ALJ first questioned Jones as to his previous work experience. (*Id.* at 94.) Jones testified that he worked at Loomis Armored in 2003 and 2004 as an ATM servicer, worked at Serphia Optical Networks in 2001 as a network analyst, worked at Broad Bridge Securities Processing ADP from 1992 to 2000 as a network analyst, and worked at the Bank of New York from 1989 to 1992 as a network analyst. (*Id.* at 94–95.)

Jones testified that he is suffering from Type II Diabetes, high blood pressure and cholesterol, and chronic neck and low back pain. (*Id.* at 96.) Jones further testified to experiencing pain in his legs and feet from diabetic neuropathy. (*Id.*) Jones testified that over the years the pain he has been experiencing has gotten worse and even though the reason he stopped working at Loomis Armored was due to a contract loss, he stated that the work was becoming too difficult for him to complete. (*Id.* at 96–97.)

Jones testified that he has been receiving chiropractic treatment for about fourteen years to deal with the neck and low back pain. (*Id.* at 98.) When questioned about the potential for surgery, Jones testified that Dr. Mehdi and Dr. Sabbagh suggested he undergo surgery, but that they could not guarantee its success. (*Id.*) Jones testified that he is considering surgery because the pain has increased. (*Id.*) Jones testified that he is constantly experiencing pain throughout the day. (*Id.* at 99.) Jones testified that "on a good morning" his pain level was at an eight, but "on a bad morning" his level was at a ten. (*Id.*) Jones testified that he uses a combination of ice and heat treatments to relieve pain. (*Id.* at 100.) He further testified that he has tried pain pills, but they do not work for him. (*Id.*) Additionally, Jones stated that sitting or standing for long periods of time would make the pain worse. (*Id.*)

Jones testified that it is a struggle for him to accomplish even basic daily activities like doing household chores, driving, walking up and down stairs, and helping his wife. (*Id.* at 102–03.) Additionally, Jones stated that receives assistance from his wife to get dressed and she has been assisting him since after the 2005 car accident. (*Id.* at 104–05.) Jones testified that he does not participate in any active hobbies and does not attend social events because of his pain. (*Id.* at 105–06.) Additionally, Jones testified that he sometimes fixes his computer to keep himself occupied. (*Id.* at 105.)

Jones testified that in an eight-hour workday he would be able to stand for an hour total in ten minute increments, sit for ten to fifteen minutes before having to stand up, lift/carry up to ten pounds, and walk about twenty steps. (*Id.* at 108–09.)

9

## 2. The Vocational Expert's Testimony

On May 6, 2010, Vocational Expert ("VE") Christina Beatty-Cody testified at Jones second administrative hearing.[3] (*Id.* at 110.) The VE testified that two jobs were being considered for Jones—a machine servicer and a network analyst. (*Id.* at 111.) The VE testified that Jones did not have transferrable skills to perform a machine servicer position at a lower level of exertion because the skills are too remote and the industry is constantly evolving. (*Id.*)

The ALJ asked the VE to consider a hypothetical individual who was forty-seven with a high school education who can do work at a light level of exertion, but cannot climb ladders, ropes, or scaffolds. (*Id.* at 111–12.) Additionally, the ALJ noted that the hypothetical individual should avoid extreme temperatures, hazards and vibration, and pushing/pulling with lower extremities. (*Id.*) The ALJ further stated that Jones' past work as a network analyst was a sedentary position. (*Id.* at 112.) The ALJ questioned the VE as to whether the hypothetical claimant could do the previous sedentary position. (*Id.*) The VE testified that the hypothetical claimant could do the previous sedentary position. (*Id.*)

The ALJ added to the hypothetical that the claimant could only participate in limited sedentary exertion that required a sit/stand option at will. (*Id.* at 112–13.) The ALJ asked whether that person could perform the previous work as stated. (*Id.* at 113.) The VE testified that the hypothetical claimant could perform the previous position at the limited sedentary level. (*Id.*)

The VE was also questioned by Jones' attorney. The relevant portion of the exchange follows:

> Q: Referring to spinal questionnaire at 15F and 30F. The hypothetical claimant could sit for a total of eight hours in an eight-hour workday. While sitting they would have to get up every 30 minutes

---

[3] Ms. Beatty-Cody was not the VE at Jones' first administrative hearing. (D.I. 10 at 110.)

|     | and move around five minutes at a time. This person could frequently lift up to 5 pounds and occasionally lift up to 10 pounds, but never more than that. He could also carry the same amount. Would that person be able to do Mr. Jones' past work? |
|-----|---|
| A:  | I have a question regarding the limitation of sitting |
| Q:  | Yes. |
| A:  | When the individual is having to get up every five minutes to move around, is that person off task? |
| Q:  | Yes |
| A:  | Then that would preclude any type of employment. |
| Q:  | And why is that? |
| A:  | If a person is off task for that amount of time, every five minutes, their productivity is most certainly going to be reduced by more than 15 to 20 percent, which would preclude any type of job. |

(*Id.* at 113–14.)

### 3. The ALJ's Findings

The ALJ conducted the standard five-step procedure to determine whether Jones was disabled. Her findings may be summarized as follows:

1. Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2008.

2. Plaintiff has not engaged in substantial gainful activity during the period from his alleged onset date of March 1, 2004, through his date last insured of December 31, 2008 (20 C.F.R. §404.1571 *et seq.*).

3. Plaintiff, through the date last insured, had the following severe impairments: Cervical and lumbar spine degenerative disc disease (20 C.F.R. §404.1520(c)).

4. Plaintiff, through the date last insured, did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §404.15209d), 404.1525 and 404.1526).

5. Plaintiff, through the date last insured, had the residual capacity to perform sedentary work as defined in 20 C.F.R. §404.1567(a), with occasional postural activities, except no climbing of ladders or scaffolds, had to avoid concentrated exposure to temperature extremes, hazards, and vibrations, avoid working overhead and pushing/pulling with the lower extremities, and required a sit/stand option.

6. Plaintiff, through the date last insured, was capable of performing past relevant work as a network analyst. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. §404.1565).

7. Plaintiff was not under a disability, as defined in the Social Security Act, at any time from March 1, 2004, the alleged onset date, through December 31, 2008, the date last insured (20 C.F.R. §404.1520(f)).

(D.I. 10 at 22–36.)

## III. STANDARD OF REVIEW

A district court's review of an ALJ's decision is limited to whether that decision is supported by substantial evidence. *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)); *see also* 42 U.S.C. § 405(g). In determining whether a decision is supported by substantial evidence, this court may not undertake a *de novo* review of the ALJ's decision and may not re-weigh the evidence of record. *See Monsour Med. Ctr. V. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Even if this court would have decided this case differently, the ALJ's decision must be affirmed if supported by substantial evidence. *See Id.* at 1190–91. If the decision is supported by substantial evidence, then the court is bound by the factual findings therein. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); 5 U.S.C. § 706(E); *see Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Substantial evidence has been defined as less than a preponderance, but "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, "the evidence must be sufficient to support the conclusion of a reasonable person after considering the evidentiary record as a whole, not just the evidence that is consistent with the agency's finding." *Id.*

Thus, "a single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Nor is evidence substantial if it is

12

overwhelmed by other evidence—particularly certain types of evidence (*e.g.*, that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. *Id.* Despite the deference due to administrative decisions in disability benefit cases, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

## IV. DISCUSSION

Jones' motion for summary judgment identifies two reasons why he believes the ALJ's decision is not supported by substantial evidence. First, Jones argues "ALJ Showalter failed to apply the proper legal standard when evaluating Dr. Kamali's opinion by not affording it the proper deference to which a treatment provider's opinion is entitled." (D.I. 12-1 at 8.) Second, Jones argues "ALJ Showalter did not properly credit the vocational expert's testimony that a hypothetical claimant with Jones' limitations would not be able to do any job because the amount of time necessarily spent off-task would preclude any meaningful employment." (*Id.* at 13.)

### A. The ALJ's Credibility Determination of Dr. Kamali's Opinion

The ALJ is the factfinder and credibility determinations are the ALJ's job alone. *Pysher v. Apfel*, 2001 WL 793305, at *2 (E.D. Pa. July 11, 2001) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). The district court may only disturb the determinations of the ALJ if they are not supported by substantial evidence. *Id.* The ALJ is entitled to reject evidence, but must explain why that evidence has been rejected. *Cotter v. Harris*, 642 F.2d 700, 705–06 (3d. Cir. 1981).

Jones correctly points out that deference is often given to the opinions of the claimants' treating physician. (D.I. 12-1 at 9.) A treating source's medical opinion will be given "controlling weight" if an ALJ finds: 1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) the opinion is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §404.1527(d)(2); Social Security Regulation ("SSR") 96-2p. Even if a treating source's medical opinion does not meet the test for controlling weight, it is entitled to great weight. *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). The ALJ will determine the weight to place in a non-controlling opinion by the following factors: 1) the examining relationship; 2) the length, nature, and extent of the treatment relationship; 3) the supportability of the opinion; 4) the consistency of the opinion; 5) specialization; and 6) other factors which tend to support or contradict an opinion. 20 C.F.R. §404.1527(d). Regardless of the weight given to any opinion, the ALJ's determination must always provide "good reasons" for the weight given to a treating source's opinion. *Id.* The ALJ can only "reject a treating physician's opinion if it is based on 'contradictory medical evidence.'" *Dougherty v. Astrue*, 715 F. Supp. 2d 572, 581 (D. Del. 2010) (citing *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). Some treating source opinions, including opinions of "disability" or an "inability to work," are not controlling or even considered medical opinions. 20 C.F.R. §404.1527(e). This is because such opinions are administrative findings on issues reserved for the Commissioner. *Id.*

Jones argues that the ALJ's decision was not supported by substantial evidence because the ALJ did not afford proper deference to Dr. Kamali's opinion. (D.I. 12-1 at 8.) The Commissioner asserts that substantial evidence supports the ALJ's determination regarding Dr. Kamali's credibility. (D.I. 14 at 15–16.)

14

In the present circumstances, there is substantial evidence to support the ALJ's decision to not give controlling weight to Dr. Kamali's opinion. The ALJ opined that "while recognizing that Dr. Kamali was a treating physician during the pertinent period under review, the undersigned does not give controlling weight, as it is not supported by medical signs and laboratory findings and is inconsistent with the detailed, contemporaneous treatment records." (D.I. 10 at 34.) The ALJ reviewed the medical evidence and opinions of two treating orthopedic physicians, Drs. Kamali and Barrish, and two consultative physicians, Drs. Helou and Schanno. The ALJ determined, after a thorough review, that Dr. Barrish's opinion should be given controlling weight instead of Dr. Kamali because Dr. Barrish's opinion was supported by clinical and laboratory findings, in addition to being supported by the record as a whole. (*Id.* at 33–35.) Further, Dr. Barrish's opinion was supported by the opinions of Drs. Helou and Schanno. (*Id.*)

The court concludes that the level of disability described by Dr. Kamali is not fully supported by the objective medical evidence presented and the record as a whole. (*Id.* at 34.) Dr. Kamali's conclusory statement that Jones "is unable to do full time competitive work and has been unable to do so since early 2005" is not supported by the record as a whole or the presented medical evidence. (*Id.*) *See* 20 C.F.R. §404.1527(e). Furthermore, Dr. Kamali's statements regarding Jones' inability to work are not controlling or valid medical opinion because the inability to work is an administrative finding reserved for the Commissioner's judgment. *See* 20 C.F.R. §404.1527(e). The ALJ gave a thorough and detailed reasoning concerning her decision to provide controlling weight to Dr. Barrish's opinion rather than Dr. Kamali's. (D.I. 10 at 33–35.) Thus the court concludes the ALJ's determination is supported by substantial evidence.

**B. The ALJ's Credibility Determination of the VE's Testimony**

15

Vocational expert testimony at an administrative hearing does not constitute substantial evidence of jobs an applicant could perform unless the testimony about the hypothetical applicant incorporates all of the applicant's limitations. *See Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004); *see also Burns v. Barnhart*, 312 F.2d 113, 123 (3d Cir. 2002). In incorporating all of the applicant's limitations the ALJ must consider the specific sit/stand limitations accompanying the sedentary work level. *See* SSR 96-9p.

Jones argues the ALJ did not properly credit the VE's testimony that a hypothetical claimant with Jones' specific sit/stand limitations would not be able to do any job because the amount of time spent off-task would preclude any meaningful employment. (D.I. 12-1 at 13.) The Commissioner argues the ALJ was not required to consider the VE's testimony because the ALJ's review ended at step four of the disability determination when it determined Jones could perform past relevant work as a network analyst.[4] (D.I. 14 at 19–20.)

The ALJ and the VE considered two possible positions in the national economy for Jones—network analyst and machine servicer. (D.I. 10 at 111.) The VE testified that Jones did not have the transferrable skills to be a machine servicer because the skills were too remote and the field is constantly evolving. (*Id.*) Therefore, the only applicable position was Jones' previous position—a network analyst. (*Id.*) The ALJ's decision gave controlling weight to Dr. Barrish's opinion as to Jones' limitations. (*Id.* at 34.) Dr. Barrish opined, in two spinal questionnaires, that Jones needed to get up and move around every thirty minutes for five

---

[4] The ALJ must follow the SSA's five-step sequential evaluation process to determine whether a claimant suffers from a physical or mental disability. *Fraser v. Astrue*, 373 F. App'x 222, 224 (3d Cir. 2010). In the determination, the ALJ must consider: (1) the claimant's current work activity; (2) the medical severity and duration of the claimant's impairments; (3) whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to return to past relevant work; and (5) if the claimant cannot return to past relevant work, whether he or she can "make an adjustment to other work in the national economy." *Id.* (citing 20 C.F.R. §404.1520(a)(4)(i)-(v)). The claimant bears the burden of proof on steps one through four. *Id.* The Commissioner bears the burden of proof at step five. *Id.*

16

minutes. (*Id.* at 412–18, 520–26.) In the ALJ's questioning of the VE she did not specify the sit/stand limitations Jones required. (*Id.* at 112.) Jones' counsel, on cross examination, narrowed the sit/stand option to that defined by Dr. Barrish and the following exchange took place:

> Q: Referring to spinal questionnaire at 15F and 30F. The hypothetical claimant could sit for a total of eight hours in an eight-hour workday. While sitting they would have to get up every 30 minutes and move around five minutes at a time. This person could frequently lift up to 5 pounds and occasionally lift up to 10 pounds, but never more than that. He could also carry the same amount. Would that person be able to do Mr. Jones' past work?
> A: I have a question regarding the limitation of sitting
> Q: Yes.
> A: When the individual is having to get up every five minutes to move around, is that person off task?
> Q: Yes
> A: Then that would preclude any type of employment.
> Q: And why is that?
> A: If a person is off task for that amount of time, every five minutes, their productivity is most certainly going to be reduced by more than 15 to 20 percent, which would preclude any type of job.

(D.I. 10 at 113–14.)

The VE testified that the job recommended for Jones was a sedentary network analyst position. (*Id.* at 112.) The court finds that the VE's testimony regarding Jones' ability to perform the sedentary network analyst position with the specific sit/stand limitations should be considered in the ALJ's disability determination because a network analyst position is Jones' past relevant work. Jones' ability to perform past relevant work compared to available positions in the national economy changes the analysis required for determining whether Jones is disabled. *See* 20 C.F.R. §404.1520(a)(4)(iv)-(v). Jones argues the hypothetical presented by the ALJ failed to take into account the extent of the sit/stand option that an individual such as Jones would need, and, therefore is not inclusive of all of his limitations. (D.I. 12-1 at 15.) The

17

excerpt of the ALJ's testimony highlighted above seems to suggest that based on the narrowed sit/stand limitation Jones would not be able to perform a sedentary network analyst position due to a reduction in productivity. From a basic reading of this testimony it seems the VE misspoke or had some confusion as to the specific sit/stand limitation as described by Jones' attorney. Clarification is needed as to the VE's understanding of the sit/stand limitation. This testimony is a crucial part of the disability decision-making process because the only job being considered in this hearing is Jones' past relevant work as a network analyst. If Jones is unable to perform the network analyst position due to productivity loss then the ALJ inquiry would not end at step four, as suggested by the Commissioner, and further inquiry would be required as to the jobs in the national economy Jones could potentially perform. *See* 20 C.F.R. §§404.1520(g) and 416.920(g). Additionally, the ALJ is required to incorporate all a claimant's limitations in a hypothetical. *Ramirez*, 372 F.3d at 552; *see also Burns*, 312 F.2d at 123. It appears the ALJ discredited the VE's testimony as to the narrowing of the sit/stand limitation, but no reason was given in the ALJ's opinion as to why this testimony was discredited. (D.I. 10 at 36.) Thus, the court must remand for further clarification on this issue.

## CONCLUSION

For the foregoing reasons, Jones' motion for summary judgment is denied-in-part and remanded-in-part.

Dated: July 20, 2015

UNITED STATES DISTRICT COURT

18